UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KENJI RYU NAKAMURA,

                Plaintiff,                       **MEMORANDUM AND ORDER**
   -against-                                   Case No. 10-CV-2797(FB)(RML)

UNITED STATES OF AMERICA,

                Defendant.
------------------------------------------------------------x

*Appearances*:
*For the Plaintiff*:
JONATHAN ROBERTS, ESQ.
Talkin, Muccigrosso & Roberts LLP
40 Exchange Place, 18th Floor
New York, NY 10005

*For the Defendant*:
LORETTA E. LYNCH, ESQ.
United States Attorney
LAYALIZA K. SOLOVEICHIK, ESQ.
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

       Plaintiff Kenji Ryu Nakamura brings this action against defendant the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA"), asserting claims for false arrest/ false imprisonment and malicious prosecution. Defendant moves to dismiss the action, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. Because the court has jurisdiction over one claim but not the other, defendant's motion is granted in part and denied in part.

I

       On March 3, 2008, plaintiff arrived at John F. Kennedy Airport on a flight from Peru. Plaintiff was stopped while passing through customs, where U.S. Customs and Border Protection ("CBP") agents found over 8,000 grams of cocaine in his luggage. Plaintiff was then arrested and charged with knowingly and intentionally engaging in narcotics trafficking. CBP also issued an immigration detainer, deferring the decision about plaintiff's

admissibility until after the resolution of the criminal case. On May 19, 2008, the U.S. District Court for the Eastern District of New York dismissed the criminal charges against plaintiff without prejudice, but ordered that plaintiff remain in U.S. Marshal custody in light of the immigration detainer. Also on May 19, immigration officials from CBP and ICE arrested plaintiff and charged him with narcotics trafficking and related offenses.

On May 21, 2008, plaintiff was transferred to CBP custody in New York City, to permit a determination regarding his admissibility to the United States. Also on May 21, plaintiff was served with a Notice to Appear at Immigration Proceedings. On May 22, plaintiff was transferred to a detention center in Pennsylvania. On May 28, he was transferred to a staging facility and detention center in Texas. On June 2, 2008, plaintiff filed a motion requesting that he be released. The complaint states that on June 25, 2008, the charges against plaintiff and the Notice to Appear were withdrawn and plaintiff was released. Defendant's memorandum of law in support of the present motion and plaintiff's memorandum in opposition both state that removal proceedings were terminated and plaintiff was released from custody on June 13, 2008.

Plaintiff now contends that it was unlawful for agents of CBP and the U.S. Immigration and Customs Enforcement ("ICE") to detain him beginning on May 19, 2008, after criminal narcotics charges against him were dismissed. Plaintiff also contends that defendant caused a false accusatory statement, the Notice to Appear, to be filed against him.[1]

---

[1] Plaintiff also filed constitutional claims for false arrest/false imprisonment and malicious prosecution. On November 26, 2010, plaintiff stipulated to dismissal of all claims other than the tort claim for false arrest/false imprisonment. On January 10, 2011, plaintiff filed an Amended Complaint asserting an additional tort claim for malicious prosecution.

2

II

Defendant argues that this action should be dismissed for the following reasons.  First, that the court lacks subject matter jurisdiction over plaintiff's claims because plaintiff cannot satisfy the FTCA's "private analogue" requirement.  Second, that even if plaintiff satisfies the private analogue requirement, the court does not have subject matter jurisdiction over plaintiff's malicious prosecution claim because the claim is integrally related to the government's decision to commence removal proceedings.

"When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).

The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence, *Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005), and the government's waiver of immunity under the FTCA must be "strictly construed in favor of the government." *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir. 1988); *see Shipping Fin. Serv. Corp.*, 140 F.3d at 131 ("[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.").

## A. Private Analogue Requirement

Defendant first argues that plaintiff's detention pending removal proceedings and the issuance of a Notice to Appear "were directly the product of CBP's determination that plaintiff was inadmissable," and that no "private analogue" exists for a "quasi-adjudicative" act like an admissibility determination. Def's Mem. of Law at 11.

### 1. Standards Governing FTCA Private Analogue Requirement

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Because sovereign immunity is jurisdictional in nature, the "terms of [the United States's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* (quoting *United Stats v. Sherwood*, 312 U.S. 584, 586 (1941)). Waivers of sovereign immunity must be "unequivocally expressed" and "construed strictly in favor of the sovereign." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). The FTCA provides an express waiver of sovereign immunity for:

> claims against the United States, for money damages... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

According to the FTCA's "private analogue requirement," the United States shall be liable only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Accordingly, the FTCA does not waive sovereign

immunity for an "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988).

The private analogue requirement "do[es] not restrict a court's inquiry to the same circumstances, but require[s] it to look further afield." *United States v. Olson*, 546 U.S. 43, 47 (2005). A court instead considers whether or not a "private person analog[y]" exists for the government conduct at issue, *id.*, or whether the plaintiff is complaining of "conduct governed exclusively by federal law or… conduct of a governmental nature or function that has no analogous liability in the law of torts." *Akutowicz v. United States*, 859 F.2d 1122, 1125 (2d Cir. 1988). "[Q]uasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law." *Id.* at 1125-26.

**2. *Caban v. United States***

Defendant relies upon *Liranzo v. United States*, in which immigration officials detained the plaintiff, who served a sentence for a narcotics conviction, several months past his release date pending removal proceedings against him. *See* 08-CV-2940 (E.D.N.Y December 15, 2010). ICE agents ultimately determined that the plaintiff was a U.S. citizen and released him. Plaintiff alleged false arrest and imprisonment and the district court held that "[i]mmigration and detention pending deportation are governed exclusively by federal law and therefore have no private analogue." *Id.* at 9.

The district court in *Liranzo* relied upon the Second Circuit's decisions in *Caban*

5

*v. United States*, 671 F.2d 1230 (2d Cir. 1982) ("*Caban I*") and *Caban v. United States*, 728 F.2d 68 (2d Cir. 1984) ("*Caban II*"). In *Caban*, the plaintiff was detained by immigration agents pending a determination of his admissibility into the United States. The Second Circuit found, with respect to the government's waiver of sovereign immunity under § 2674, that "immigration officers are accorded a special status by law which requires them to detain persons in situations also outlined by law. These circumstances are far different from those in which a person who is either thought to have committed a crime or thought to be an alien is detained by a private individual." *Caban II*, 728 F.2d at 74.

Contrary to the outcome of *Liranzo* and defendant's arguments, *Caban II* does not stand for the sweeping proposition that the actions of immigration agents in detaining a person never have a private analogue, and that sovereign immunity is never waived in such cases. The Second Circuit simply framed the "private analogue" narrowly, as follows: the United States could not be held "liable for [plaintiff's] detention under principles of New York law"; instead, "liability of the government thus must be assessed in light of the liability New York would impose upon one having a privilege to detain a would-be entrant who did not satisfactorily establish his right to enter." *Id.*

**3. Analysis**

Plaintiff agrees that there is no private analogue to immigration officials' determination of an individual's citizenship. *See Akutowicz*, 859 F.2d at 1126 (holding that "withdrawal of a person's citizenship constitutes a quasi-adjudicative action for which no private analog exists."). Unlike the plaintiffs in *Caban* and *Liranzo*, however, Nakamura –

who was not a United States citizen at the time of his detention– does not argue that immigration agents made an improper determination with respect to his citizenship status. Instead, he contends that his "detention and prosecution without cause" were "analogous to arrest and prosecution by police." Pl's Mem. of Law at 6.

The government actions of which plaintiff complains– his detention pending removal proceedings, even after the narcotics charges against him were dismissed– were not quasi-adjudicative or quasi-legislative. The closest private analogy for these circumstances is to law enforcement, even though the standards governing immigration officials are not identical to those for other law enforcement officers because "people have significantly less rights at a border than they have in the interior." *Caban I*, 671 F.2d at 1235; *see Caban II*, 728 F.2d at 72 ("INS agents are 'investigative or law enforcement officers' within the meaning of this section."). It is not determinative that a private person could not engage in conduct that is identical to the duties of immigration officials, so long as some reasonable private analogy can be found. *See Figueroa v. United States*, 739 F. Supp. 2d 138, 141 (E.D.N.Y. 2010) ("[T]he government is not insulated from liability simply because the alleged negligence was committed in the performance of a 'uniquely governmental function.'"); *Carter v. United States*, 725 F. Supp. 2d 346, 357 (E.D.N.Y. 2010) ("The Supreme Court has rejected the argument that 'uniquely governmental functions' are, *ipso facto*, exempt from liability.").

With this in mind, the Second Circuit explained in *Caban II* what form of private liability should cover cases like this one, finding in that case that the district court properly "noted that the New York Court of Appeals had defined the tort of false imprisonment as the unlawful deprivation of another's freedom to choose his own location

7

if (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Caban II*, 728 F.2d at 71 (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).  With respect to whether or not the actions of the immigration officials were privileged, "the district court applied the proper legal principles in ruling that the United States was not liable. . . if the INS agents acted in conformance with the federal standards regarding treatment of applicants for entry to the United States." *Id.* (internal quotation marks omitted); *see Rhoden v. United States*, 55 F.3d 428, 430 (9th Cir. 1995) (holding, for a false arrest/false imprisonment claim, that a court "would apply federal law to determine whether an arrest by a federal officer was legally justified and hence privileged," and that the liability of the United States would "be determined by whether the INS agents complied with applicable federal standards.").

Accordingly, under the reasoning from *Caban II*, plaintiff's claim for false arrest/false imprisonment is "comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred." *Chen*, 854 F.2d at 626.  The court therefore has jurisdiction over this claim.

**B. Malicious Prosecution**

Defendant next argues that the court lacks subject matter jurisdiction over plaintiff's claim for malicious prosecution because the Immigration and Nationality Act precludes challenges to the decision of immigration officials to commence proceedings against an alien. Specifically, "no court shall have jurisdiction to hear any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to

8

commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g); *see Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*"). Plaintiff agrees that § 1252(g) precludes challenges to decisions to commence removal proceedings, but argues that the court has jurisdiction over a challenge "to continue to prosecute and detain an alien, separate and apart from the decision to commence removal proceedings." Pl's Mem. of Law at 9.

Despite his contentions, plaintiff cannot plead a claim for malicious prosecution that is "separate and apart" from the decision to commence removal proceedings. *See El Badrawi v. U.S. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 264-65 (D. Conn. 2008) (Plaintiff's "claims for malicious prosecution and vexatious suit, by their very nature, seek to impose liability for the government's decision to initiate legal proceedings against" him). Under New York law the elements of malicious prosecution are: (1) "the commencement or continuation of a criminal proceeding" against plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding and (4) actual malice. *Broughton*, 37 N.Y.2d at 457.

The essence of plaintiff's malicious prosecution claim, according to the terms of his complaint, is that "Defendant caused a false accusatory instrument [the Notice to Appear] to be filed against" him. Am. Compl. ¶ 38. Section 1252(g) "focus[es] special attention upon "the initiation or prosecution of various stages in the deportation process." *AADC*, 525 U.S. at 483; *see Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 124 (D. Conn. 2010) (The district court "does not have jurisdiction to hear claims arising from the decision to issue a notice to appear.").

9

Accordingly, plaintiff's malicious prosecution claim is barred by § 1252(g). *See Arostegui v. Holder*, 368 Fed. Appx. 169, 171 (2d Cir. 2010) ("Whether and when to commence removal proceedings is within the discretion of DHS, and we do not have jurisdiction to review such decisions" under § 1252(g)); *El Badrawi*, 579 F. Supp. 2d at 264-65 (holding that a malicious prosecution claim, based upon issuance of a notice to appear, was an objection to the government's decision to commence proceedings and was barred by § 1252(g)).[2]

## CONCLUSION

For the foregoing reasons, the court has subject matter jurisdiction over plaintiff's claims for false arrest and false imprisonment. It does not have subject matter jurisdiction over plaintiff's claim for malicious prosecution, and that claim is dismissed.

**SO ORDERED.**               s/ Judge Frederic Block

                                                     FREDERIC BLOCK
                                                     Senior United States District Judge

Brooklyn, New York
May 7, 2012

---

[2] Defendant also moves to dismiss plaintiff's claim for malicious prosecution for lack of subject matter jurisdiction under § 2674. Because the court lacks subject matter jurisdiction over the malicious prosecution claim under § 1252(g), there is no need to consider whether that claim satisfies the private analogue requirement.